# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

```
------------------------------- x
                                :
DEAVEN TUCKER,                  :
                                :
          Plaintiff,            :
                                :  Civil No. 3:19-cv-2014(AWT)
v.                              :
                                :
CAROL CHAPDELAINE, GLORIA       :
GENEGO, JOSE ANGEL RIVERA,      :
ROCHELLE LIGHTNER,GUILIANA      :
MUDANO, ANGEL QUIROS, MICHAL    :
DESENA, SCOTT ERFE, SCOTT       :
SEMPLE, and BENNET,             :
                                :
          Defendants.           :
------------------------------- x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Deavan Tucker, who was at all relevant times an inmate in the custody of the Connecticut Department of Correction, brings this civil rights action pursuant to 28 U.S.C. § 1983. The remaining claims are a claim for retaliation in violation the First Amendment against defendant Jose Angel Rivera and claims for deliberate indifference to medical needs in violation of the Eighth Amendment against defendants Gloria Genego and Rochelle Lightner.

The defendants have moved for summary judgment on the remaining claims. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

## I. FACTUAL BACKGROUND

At all times relevant to this action, the plaintiff was incarcerated at MacDougall-Walker Correctional Institution ("MWCI") in the custody of the Connecticut Department of Correction ("DOC").

### A. Retaliation: January 2017 Cell Search

During January 2017, defendant Rivera was employed by DOC as a captain and assigned to MWCI as the manager of MWCI's Intelligence Unit ("IU"). The plaintiff claims that defendant Rivera ordered IU staff to search his cell on January 6, 2017 and remove some of his personal property.

Inmate cell searches can be conducted for numerous reasons, including "randomly as part of facility security measures, during regular unit or facility shakedowns, in response to specific emergent threats, and related to specific investigations." Defs.' Local Rule 56(a)1 Statement (ECF No. 58-2) ¶ 5. MWCI's general practice is that "[a]ny unit-wide shakedown of inmate cells [is] noted in the unit's logbook entries," and "unless the shakedown was part of a regularly scheduled annual search, [it] would likely be associated with an incident report." Id. ¶ 6. Similarly, cell searches conducted by

IU staff outside of a unit-wide shakedown are noted in the logbook of the housing unit where the cell is located. See id. (". . . if any staff entered the unit during a particular shift to, for instance, conduct a cell search, such activity would also be noted in a unit logbook."). Such searches are also typically documented in an associated incident report because they are usually associated with an active intelligence investigation.

A member of MWCI's staff conducted a search of the facility's records for any documentation relating to a search of the plaintiff's cell in January 2017 and found documentation of only one search. This search occurred on January 20, 2017 and was a part of a facility-wide shakedown authorized by Warden Chapdelaine.[1] Warden Chapdlaine authorized the facility-wide shakedown in response to the IU's discovery of a contraband

---

[1] The plaintiff denies the January 20, 2017 search of the plaintiff's cell was a part of the facility-wide shakedown. "[E]ach denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to . . . evidence that would be admissible at trial." D. Conn. L. Civ. R. 56(a)3. In support of his denial, the plaintiff cites (1) the "Defendants documentation . . . [which] states that the incident leading the shakedown started '[o]n 1-18-17 at approximately 5:00 PM', after which the facility was 'immediately' placed on lockdown" and (2) a "February 10, 2017 Inmate Property Status and Receipt" which refers to the replacement of items of the plaintiff's property. Pl.'s Local Rule 56(a)2 Statement of Facts in Opp'n. to Summ. J. (ECF No. 64-1) Resp. to ¶¶ 12-14. The cited evidence does not contradict the fact in question. Accordingly, the court deems this fact to be admitted for purposes of the instant motion. See Miron v. Town of Stratford, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)(1) statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.").

cellphone in MWCI's H-Pod housing unit on January 18, 2017. This
"led to all inmates having their cell searched, including the
plaintiff." Defs.' Ex. E, Decl. of Officer Naddeen McKenzie (ECF
No. 58-7) ¶ 11.

At the time, the plaintiff was housed in MCWI's I-Pod. The
shakedown of I-Pod occurred on January 20, 2017. As part of the
unit shakedown, inmates in I-Pod were strip searched and had
their cells searched. The strip search of the plaintiff and the
search of his cell was documented by staff in an MWCI Cell
Shakedown & Inspection form. The form requires the inspecting
officers to list all items of contraband that are found. No
items of contraband are listed. See Defs.' Ex. E, Attach. 6,
1.20.17 Shakedown Form (ECF No. 58-7) at 20.

"The plaintiff submitted eight administrative remedies
pursuant to AD 9.6 at MWCI from August 1, 2016, through May 17,
2018." Defs.' Local Rule 56(a)1 Statement ¶ 35. None of the
plaintiff's grievances alleged retaliation by defendant Rivera.

### B. Deliberate Indifference: March 2017 Medical Care

At approximately 9:00 PM on March 11, 2017, the plaintiff
was seen by Nurse Henry Mushi at MWCI's medical department for
an injury to his right knee. The plaintiff told medical staff
that he had fallen outside the bathroom after showering, he was
unable to stand or put weight on the knee, and it was tender to
touch.  Nurse Mushi "noted mild swelling on the lateral sides of

the right knee, and no skin opening or abrasion." Id. ¶ 21.
"Nurse Mushi consulted with the on-call physician and the
plaintiff was provided 200mg of Motrin and sent to the hospital
emergency room for further evaluation." Id.

The plaintiff claims that prior to being seen by Nurse
Mushi, he was denied care by defendant Gengo. During March 2017,
defendant Genego was employed as a nurse by the University of
Connecticut Health Center in Correctional Managed Health Care
("CMHC") to provide care at MWCI. The plaintiff alleges in the
Amended Complaint that when officers first brought him to the
medical department in a wheelchair following his fall, defendant
"Genego looked at Plaintiff's knee but declined to perform any
examination. Instead, she began to yell and curse at him for
filing a complaint about her." Am. Compl. (ECF No. 50) at 5. The
plaintiff further alleges that only after a lieutenant, who had
come to the medical unit to escort the plaintiff to the
restrictive housing unit, "observed that Plaintiff's knee had
swelled to three times its size and asked another nurse to
assess Plaintiff's knee" was he seen by Nurse Mushi. Id. At the
time his condition was assessed by Nurse Mushi, the plaintiff
indicated he had been feeling pain in his right knee for

"approximately four hours." Defs.' Local Rule 56(a)1 Statement ¶ 21; see also Defs.' Ex. A (ECF No. 59), at 7.[2]

"At the hospital, the plaintiff received imaging and was diagnosed with a muscle tear in his right knee." Defs.' Local Rule 56(a)1 Statement ¶ 24. "The hospital's physician recommended the use of ice packs, ace wrap, and crutches if needed," and "provided the plaintiff 800 mg of Motrin." Id.

When the plaintiff returned to MWCI from the hospital, he "received an order for 800mg of Motrin, taken three times a day, for three weeks." Id. ¶ 25. "The order requested staff provide this medication during med-call until his supply was fulfilled and he could maintain the medication on his person." Id. The plaintiff alleges in the Amended Complaint that upon his return from the hospital, defendant "Genego discontinued all pain medication," and "refused to prescribe any medication for his painful knee injury." Am. Compl. at 5, 10.

An inmate's prescriptions and the administration of the medications by medical staff is recorded on a "Medication Administration Record" (MAR).  Staff note administration of an inmate's medication on an MAR by writing their initials under the date medication is provided to the inmate. In addition,

---

[2] The page numbers cited to in this ruling for documents that have been electronically filed refer to the page numbers in the header of the documents and not to the page numbers in the original documents, if any.

staff will also note on an MAR if the inmate fails to show up to receive their medication by writing "NS" or drawing a circle in the associated entry.

The plaintiff's MAR for March 2017 lists the prescription for Motrin and has three corresponding rows for staff to note administration of the medication "in the morning ('AM'), afternoon ('1P'), and evening ('HS')." Defs.' Local Rule 56(a)1 Statement ¶ 27; see also Defs.' Ex. A at 27. During March 2017, defendant Genego worked the second shift, which began at 3:00 pm and ended at 12:00 am. "Therefore, the only medication administration time during which she would have provided medication to the plaintiff would have been the evening 'HS' entry." Defs.' Local Rule 56(a)1 Statement ¶ 27. The plaintiff's MAR shows he was given his dose of Motrin every evening, with defendant Genego administering it "nearly every day, as demonstrated by her initials 'GG' written in each entry." Id.; see also Defs.' Ex. A at 27. The plaintiff's MAR also shows that he failed to show up for several of his morning and afternoon medication doses.

In March 2017, defendant Lightner was employed by CMHC as a health services administrator. Defs.' Local Rule 56(a)1 Statement ¶ 17. In this role, "she primarily ensured the orderly operation of the medical units she oversaw by ensuring that policies were followed by staff and inmates . . . . [and] also

responded to inmate requests that were sent to her attention and administrative remedies appeals related to administrative and/or operational issues." Id. ¶ 18. The plaintiff alleges in the Amended Complaint that he complained to defendant Lightner "regarding Genego's refusal to prescribe pain medication, but she took no steps to investigate the matter." Am. Compl. at 10. "Lightner does not recall ever receiving any communication from the plaintiff regarding any issue, including any complaint that Nurse Genego was refusing to provide the plaintiff with pain medication around March 2017." Defs.' Local Rule 56(a)1 Statement ¶ 31.

## II. LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists."

Marvel Characters v. Simon, 310 F.3d 280, 286 (2d Cir 2002).  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it would "affect the outcome of the suit under the governing law." Id.

When ruling on a motion for summary judgment, the court must respect the province of the jury, and therefore may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994) ("[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."). In determining whether a genuine issue of material fact exists, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [his] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (ellipsis in original) (quoting Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 177 (2d Cir. 1990)).

## III. DISCUSSION

### A. Retaliation

The plaintiff claims that defendant Rivera retaliated against him for complaining and filing grievances about DOC staff members by ordering members of the IU to search his cell and confiscate items of his personal property on January 6, 2017.

To establish a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015) (quoting Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009). "[I]n the prison context," an adverse action is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (ellipsis in original) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)). "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," courts "approach prisoner retaliation claims with skepticism and particular

care." Dolan, 794 F.3d at 295 (quoting Davis, 320 F.3d at 352);
see also Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)
("Retaliation claims by prisoners are 'prone to abuse' since
prisoners can claim retaliation for every decision they
dislike." (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d
Cir. 1983))).  Such claims must be "'supported by specific and
detailed factual allegations,' not stated 'in wholly conclusory
terms.'" Dolan, 794 F.3d at 295 (quoting Flaherty, 713 F.2d at
13).

    The plaintiff has failed to create a genuine issue of
material fact as to the second element of a First Amendment
retaliation claim, i.e., whether defendant Rivera took an
adverse action against him.

    Although the plaintiff alleges in the Amended Complaint
that "[o]n January 6, 2017, Intelligence Security Division
officers searched Plaintiff's cell under the direction of Rivera
[and a]ll of the replacement property was re-confiscated," Am.
Compl. at 5, mere allegations are insufficient create a genuine
issue of material fact. See Fletcher v. Atex, Inc., 68 F.3d
1451, 1456 (2d Cir. 1995) ("[M]ere conclusory allegations or
denials in legal memoranda . . . are not evidence and cannot by
themselves create a genuine issue of material fact where none
would otherwise exist." (internal quotation marks and citations
omitted)). The only admissible evidence offered by the plaintiff

in support of his allegation is an Inmate Property Status and
Receipt dated February 10, 2017. See Pl.'s Ex. A (ECF No. 64-2)
at 2. It is marked "Returned to Inmate" and lists four items of
property to be replaced. Id. Even accepting the plaintiff's
contention that this document creates "a genuine issue of
material fact as to whether property was taken in January 2017,"
Pl.'s Mem. in Opp'n to Mot. for Summ. J. (ECF No. 64) at 5,
there is no evidence linking the alleged property seizure to
defendant Rivera. The form does not contain any information
indicating when or how the plaintiff's property was taken, nor
what MWCI staff member, if any, directed its confiscation.

Moreover, the defendants have produced evidence
establishing that the plaintiff was not subjected to a search on
January 6, 2017. Officer Naddeen McKenzie is employed by the DOC
as a Correctional Officer at MWCI and serves as a litigation
liaison officer. In this role, McKenzie has access to MWCI's
digital and physical records. McKenzie avers s/he reviewed
MWCI's records for documentation of any searches conducted in
the plaintiff's housing unit in January 2017, and review showed
there is "evidence of only one search of either the entire unit
or the plaintiff's cell individually during the month of January
2017 . . . . [and] that occurred on January 20, 2017." Defs.'
Ex. E, Decl. of Officer Naddeen McKenzie ¶ 10.

The defendants have also produced evidence establishing that the January 20, 2017 search of the plaintiff's cell was part of a facility wide-shakedown, not a search ordered by defendant Rivera or specific to the plaintiff. This includes a sworn declaration from defendant Rivera and contemporaneous records from MWCI relating to the search. In his sworn declaration, defendant Rivera states:

> On January 18, 2017, the MWCI intelligence unit received a tip that there was a cell phone in the H unit. I directed staff to act on the tip and we located the contraband and the entire facility was placed on lockdown. The warden then authorized a full facility shakedown, which resulted in all inmates having their cell searched, including the plaintiff. The facility-wide shakedown had nothing to do with the plaintiff personally. Intelligence unit staff would have participated in the facility-wide shakedown. I did not participate in the search of the plaintiff's cell or specifically direct staff in any regard related to such search.

Defs.' Ex. B, Decl. of Jose Rivera (ECF No. 58-4) ¶ 13. An Incident Report dated January 18, 2017 shows that it was "Warden Chapdelaine [who] authorized [the] complete facility recall and shakedown," and not defendant Rivera. Defs.' Ex. E, Attach. 5, 1.18.17 Incident Report (ECF No. 58-7) at 17. Defendant Rivera's statement is also supported by a Logbook Entry from the plaintiff's housing unit, which shows the unit-wide shakedown took place on January 20, 2017. Defs.' Ex. E, Attach. 4, 1.20.17 Logbook Entry (ECF No. 58-7) at 15. Finally, an MWCI Cell Shakedown & Inspection form documented the search of the

plaintiff's cell during the shakedown. The form requires inspecting officers to list all items of contraband that are found. No items of contraband are listed. See Defs.' Ex. E, Attach. 6, 1.20.17 Shakedown Form at 20.

Looking at the record in the light most favorable to the plaintiff, he has failed to create a genuine issue as to whether defendant Rivera took an adverse action against him. Accordingly, defendant Rivera is entitled summary judgment with respect to the First Amendment retaliation claim.

The defendants have also argued the plaintiff's claim is barred due to his failure to exhaust available administrative remedies. The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all administrative remedies prior to filing a federal lawsuit regarding prison conditions. See 42 US.C. § 1997e(a). The plaintiff concedes that he did not file a grievance with respect to defendant Rivera's alleged retaliatory conduct, see Pl.'s Local Rule 56(a)2 Statement of Facts in Opp'n. to Summ. J. (ECF No. 64-1) Resp. to ¶ 37, but contends the PLRA exhaustion requirement is excused because "threats or other intimidation by prison officials deterred the Plaintiff from filing a grievance against [defendant Rivera] in January 2017," Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 4. However, as there is no genuine issue as to the fact that the only search of the plaintiff's cell in January 2017 was not ordered by

defendant Rivera, it follows that there was no event that could have been the basis for a grievance. Thus, the court does not reach the issue of whether the plaintiff was excused from exhausting administrative remedies.

## B. Deliberate Indifference

The defendants maintain that there is insufficient evidence to create a genuine issue as to the plaintiff's claims against defendants Genego and Lightner for deliberate indifference to medical needs in violation of the Eighth Amendment.[3] The court agrees.

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (alteration in original) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  "The 'deliberate indifference standard embodies both an objective and a subjective prong.'" Morgan v. Dzurenda, 956 F.3d 84, 89 (2d Cir. 2020) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). Objectively, a plaintiff must demonstrate that (1) he "was actually deprived of adequate medical care," and (2) the "inadequacy in medical care [wa]s sufficiently serious," which requires examination of "how

---

[3] The plaintiff did not address these arguments in his opposition.

the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." Salahuddin v. Goord, 467 F.3d 263, 279-280 (2d Cir. 2006). Subjectively, "it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health . . . [i.e.] that the charged official act[ed] or fail to act while actually aware of a substantial risk that serious inmate harm will result." Id. at 280 (internal citations omitted).

### 1. **Defendant Genego**

The plaintiff asserts two claims of deliberate indifference against defendant Genego.

The plaintiff's first claim is based on defendant Genego's alleged refusal to treat the plaintiff when he was brought to the medical unit with a knee injury on March 11, 2017. Because the plaintiff received treatment by other medical providers the same night after the point at which he alleges defendant Genego refused to treat him, the plaintiff is complaining of a delay in treatment.

With respect to the objective component, where, as here, the plaintiff complains about a delay in treatment, "it is appropriate [for the court] to focus on the challenged delay" rather than the plaintiff's underlying medical condition alone "in analyzing whether the alleged deprivation is, . . . 'sufficiently serious,' to support an Eighth Amendment claim."

Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis
in original) (quoting Chance, 143 F.3d at 702); see also Cruz-
Droz v. Marquis, 2018 U.S. Dist. LEXIS 43277, *11 (D. Conn. Mar
16, 2018) ("Where the claim is for a temporary delay in
otherwise adequate treatment, the Court focuses on the delay . .
. to determine whether the need is sufficiently serious . . .
.").  The court considers the reason for the delay and whether
the delay worsened the prisoner's condition. See Smith, 316 F.3d
at 187; see also Benjamin v. Pillai, 2018 U.S. Dist. LEXIS
18305, *8 (D. Conn. Feb. 5, 2018) ("Courts have found that a
plaintiff's allegations fail to meet the objective prong where
the alleged delay in providing medical attention is neither the
underlying cause of a plaintiff's condition nor contributed to a
worsening in the condition." (internal quotation marks and
citation omitted)). "[I]n most cases, the actual medical
consequences that flow from the alleged denial of care will be
highly relevant to the question of whether the denial of
treatment subjected the prisoner to a significant risk of
serious harm." Smith, 316 F.3d at 187.

     Medical records submitted by the defendants show that the
plaintiff received treatment by Nurse Mushi for his knee at
approximately 9:00 PM on March 11, 2017. Defs.' Ex. A at 6; see
also id. at 6-8 (Nurse Mushi examined the plaintiff and
consulted with the on-call physician, and ultimately the

plaintiff was provided 200mg of Motrin and sent to the hospital for further evaluation). At the time he was examined by Nurse Mushi, the plaintiff "indicated he had felt pain in his knee for approximately four hours."  Defs.' Local Rule 56(a)1 Statement ¶ 21; see also id. at 7. Therefore, even accepting the plaintiff's unsupported allegation that defendant Genego refused to treat him, the plaintiff would have waited, at most, four hours -- minus the time it took for him to get to the medical unit and see Genego -- for an examination, Motrin, and referral to the hospital for further care. There is no evidence in the record, nor does the plaintiff contend, that such delay caused or exacerbated his condition. Thus, no reasonable jury could find that any delay in treatment constituted a sufficiently serious deprivation of medical care. See e.g., Valdiviezo v. Boyer, 752 Fed. Appx. 29, 32 (2d Cir. 2018) (affirming dismissal of deliberate indifference claim because the plaintiff did not allege that the delay exacerbated his injuries, notwithstanding his allegation that he remained in pain during the delay); Brockett v. Lupis, 2022 U.S. Dist. LEXIS 93638, *21 (D. Conn. May 25, 2022) ("As [the plaintiff] has presented no evidence showing that the delay . . . exacerbated his injuries or caused any harm other than possible discomfort or pain, he has not demonstrated a genuine issue of material fact regarding the objective element of the deliberate indifference standard.").

Therefore, the court need not address the the subjective prong of the deliberate indifference standard as summary judgment is appropriate on this claim based on the plaintiff's failure to offer evidence that could establish the objective prong.

The plaintiff's second claim of deliberate indifference against defendant Genego is based on her alleged refusal to prescribe the plaintiff pain medication for his knee injury when he returned from the hospital. The evidence submitted by the defendants establishes that defendant Genego is a Licensed Practical Nurse and prescribing medication was not among her general responsibilities. See Defs.' Local Rule 56(a)1 Statement ¶¶ 19-20 ("Generally . . . she assisted with handing out medications to the inmate population in various locations around the medical unit. Her subsequent time was usually split between meeting with inmates related to specific medical complaints, addressing codes or medical emergencies throughout the facility, or completing paperwork." (internal citation omitted)). A reasonable jury could not find that defendant Genego acted with deliberate indifference by failing to prescribe the plaintiff pain medication when she had no authority to do so. See Spencer v. Armor Corr. Health Inc., 2022 U.S. Dist. LEXIS 60894, *9 (E.D.N.Y. Mar 21, 2022) (dismissing deliberate indifference claim against nurses who "failed to prescribe [the plaintiff]

any pain medication" because "no allegations in the complaint .
. . plausibly suggest that these two nurses even had the
authority to prescribe pain medication").

Moreover, even if the defendant Genego had the authority to
prescribe pain medication, summary judgment would still be
appropriate. The plaintiff did receive a prescription for pain
medication upon his return to MWCI from the hospital. To the
extent the plaintiff is alleging that defendant Genego's failure
to prescribe <u>additional</u> pain medication was deliberately
indifferent, "[t]hat allegation is essentially a disagreement
with his medical providers' decision not to prescribe stronger
pain medication . . .  rather than a claim that medical
attention was denied entirely," Veloz v. New York, 339 F. Supp.
2d 505, 525 (S.D.N.Y. 2004), and it "is well-established that
mere disagreement over the proper treatment does not create a
constitutional claim," Chance, 143 F.3d at 703. See, e.g., Hill
v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (inmate's
allegation that Motrin was insufficient and stronger pain
medication was required did not state a claim for deliberate
indifference); Evans v. Manos, 336 F. Supp. 2d 255 (W.D.N.Y.
2004) (inmate's opinion that doctor should have prescribed
something stronger than Advil and a back brace does not give
rise to an issue of fact as to whether his constitutional rights
were violated); Jackson v. Valletta, 2017 U.S. Dist. LEXIS

212274, *4 (D. Conn. Dec 28, 2017) (inmate's view that the doctor should have prescribed Percocet instead of Tylenol 3 following his surgery cannot support a claim for deliberate indifference).

Finally, insofar as the plaintiff alleges in the Amended Complaint that defendant Genego interfered with his access to Motrin, see Am. Compl. at 5 ("[u]pon Plaintiff's return to MacDougall, Genego discontinued all pain medication"), this mere allegation is plainly contradicted by the evidence in the record. The plaintiff concedes that, due to her work schedule, defendant Genego would have only provided his evening dose of Motrin and that he received his evening dose of Motrin every day in March 2017 following his return from the hospital. See Pl.'s Local Rule 56(a)2 Statement of Facts in Opp'n. to Summ. J. Resp. to ¶ 27; see also Defs.' Ex. A at 27.

Accordingly, defendant Genego is entitled to summary judgment with respect to the claims of deliberate indifference against her.

### 2. **Defendant Lightner**

As to defendant Ligtner, the plaintiff's deliberate indifference claim is based on her alleged inaction to prevent defendant Genego from interfering with his treatment.

The plaintiff alleges in the Amended Complaint that he "complained about Genego's conduct to . . . Lightner" and "wrote

-21-

to Lightner regarding Genego's refusal to prescribe pain medication, but she took no steps to investigate the matter." Am. Compl. at 5, 10. As part of her role as health services administrator, defendant Lightner "responded to inmate requests that were sent to her attention and administrative remedies appeals related to administrative and/or operational issues." Defs.' Local Rule 56(a)1 Statement ¶ 18. Defendant Lightner's general practice was that when she received a complaint from an inmate that they were not receiving particular medical care, she reviewed the inmate's medical record to determine whether they needed to meet with a medical provider to address their concern. See Defs.' Ex. D, Decl. of Rikel Lightner (ECF No. 58-6) ¶ 7. The plaintiff has not offered any evidence that defendant Lightner ever deviated from this general practice. "Lightner does not recall ever receiving any communication from the plaintiff regarding any issue, including any complaint that Nurse Genego was refusing to provide the plaintiff with pain medication around March 2017." Defs.' Local Rule 56(a)1 Statement ¶ 31. The plaintiff has not offered any evidence that could show that defendant Lightner was aware of his alleged issues with defendant Genego. The plaintiff's mere allegation in the Amended Complaint that he complained to Lightner is insufficient to create a genuine issue of material fact with regard to either prong of the deliberate indifference standard.

-22-

See Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

Accordingly, defendant Lightner is entitled to summary judgment with respect to the claim of deliberate indifference against her.

**IV. CONCLUSION**

For the reasons set forth above, the Defendants' Motion for Summary Judgment (ECF No. 58) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 1st day of March 2024, at Hartford, Connecticut.

/s/
_____
Alvin W. Thompson
United States District Judge